LANSING, Receiver, &c. v. WOODWORTH & GOULD.

A general assignment by an insolvent debtor in trust for the security of all persons who were or *who should become* indorsers or sureties for the debtor, is fraudulent and void as to creditors.

A judgment confessed by a debtor to secure existing and future indorsements for his accommodation, held to be valid. Such a judgment is not an *estate or interest in lands*, and is not within the provisions of the Revised Statutes relative to uses and trusts. *Semble*, that new liabilities incurred for the debtor, under such judgment, would be postponed to intervening liens.

Albany, July 26 ; July 27, 1843.

THE bill was filed by Charles B. Lansing, as receiver of the property and effects of J. Woodworth, (appointed by the court of chancery in a creditor's suit commenced by R. Woodworth,) for the purpose of setting aside as fraudulent against R. Woodworth and other creditors, a judgment confessed by J. Woodworth to Gould, and an assignment executed by him to the same person.

It appeared that on the fourth day of November, 1840, the defendant Woodworth confessed a judgment to the defendant Gould, upon a bond in the penalty of $40,000, conditioned for the payment of $30,000. A memorandum in writing was made at the same time, stating that the judgment was given to secure Gould for moneys due to him, and also to secure all persons who were or should become indorsers on Woodworth's paper, or who were his sureties, and to secure the state for moneys due ; and these liabilities were to be first paid. Secondly, to pay James L'Amoreux and certain other creditors named, the sums due to them.

The debts due to the creditors specified, and the existing liabilities of the indorsers and sureties of Woodworth, amounted at that time to more than the $30,000.

On the 30th day of April, 1841, Woodworth executed an assignment to Gould, conveying to him all his real estate in this state, in trust to pay substantially the same debts provided for

by the judgment, including future indorsements ; and to restore the surplus, if any, to the assignor.  This assignment was in effect, a general assignment.  It did not appear that the assignor then had any property in this state which was not embraced in it.  He was largely indebted to divers persons, whose debts were not mentioned in the assignment.

The assignment was intended to co-operate with the judgment, and to make a more perfect security for the preferred creditors.  The answer alleges that after the judgment was entered, it was believed that a deed or assignment would be beneficial to all the parties in interest, because it would facilitate sales of the real estate, and avoid the long delay consequent upon perfecting title under the judgment, but without intending to impair the lien or security of the judgment.

R. Woodworth was a creditor at the time of these transactions.  He recovered a judgment against J. W., on the 1st of May, 1841, and filed a bill on the return of his execution.  The complainant was appointed receiver on the 6th of October following.  J. W. executed to him the assignment of all his property, which is customary in creditors' suits.

*S. H. Hammond*, for the complainant.

*S. M. Woodruff* and *M. T. Reynolds*, for the defendants.

THE ASSISTANT VICE-CHANCELLOR.—The complainant, who has become vested with Woodworth's title as receiver under a creditor's bill, claims that both the assignment and judgment are fraudulent as against creditors.

The assignment is plainly invalid on account of the trusts for the benefit of future indorsers, and of the payment of the residuum to the assignor instead of his general creditors.

The complainant insists that the judgment is also fraudulent, for the reasons : 1. That it contains the same illegal trust for future indorsers.  2. That the judgment and assignment in fact constitute but one transaction, being made with the same intent, for the same objects and purposes, and in aid of each other,

As to the second objection, there is one essential ingredient wanting ; they were not made at the same time. On the contrary, the judgment was perfect, before the assignment was thought of, and nearly six months before it was executed. They do not therefore constitute one transaction, and the judgment is not impaired by the abortive attempt to aid it by the assignment. It is not like the case of *Mackie* v. *Cairns*, (5 Cowen, 547.) There the judgment was given to bolster up a fraudulent assignment, after the execution of .the latter, and after its validity had become suspected.

Then as to the first objection. The confession of judgments to secure indorsements and future advances, is not uncommon, and so far as I know, is of unquestioned propriety. This court has sustained mortgages given for the same purpose, holding as to mortgages, as it probably would in respect of judgments, that advances made, or liabilities incurred, after the attaching of a subsequent lien, would be subject to the priority of the latter. Courts of law assume an equitable jurisdiction over this class of securities, and abuses are corrected and frauds remedied on summary application. (See *Brinckerhoff* v. *Marvin*, 5 J. C. R., 320; *Roosevelt* v. *Mark*, 6 ibid. 266; *Norton* v. *Whiting*, 1 Paige, 578; *Monell* v. *Smith*, 5 Cowen, 441.)

The provisions of the Revised Statutes as to trusts, are not applicable. The judgment is not an " *estate* or *interest* in lands." It is a chattel, a mere security for a debt.

In this case, it seems there was no room for the operation of the provision for future indorsements, as the existing debts and indorsements preferred, exceeded the $30,000 secured by the judgment.

This is not a case for a merger. Even if the judgment were an *estate* in the land and became united with the legal estate by the deed to Gould ; still the express intention of the parties was to keep the judgment on foot, so that there should be no merger.

There must be a decree avoiding the assignment and declaring the judgment valid, without costs to either party. The complainant, as receiver of Woodworth's effects in the creditor's suit, is entitled to the possession of the real estate assigned and of all demises made by the assignee, and to the income derived from

it by him.    There may be a reference to ascertain the latter, and on taking the account, the assignee is to be allowed for his disbursements under the assignment, and for payments made in pursuance of it, before the commencement of the suit.